UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| TIMOTHY J. COLLINS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 4:09-CV-0012-AS |
| | ) | |
| THE TRUSTEES OF PURDUE | ) | |
| UNIVERSITY, STEPHEN J. AKERS, | ) | |
| LYMAN (TRAE) R. MITTEN III, | ) | |
| JEANNE V. NORBERG, ALICE M. | ) | |
| D'AMORE, JANE DOES (UNKNOWN | ) | |
| PURDUE EMPLOYEES), JOHN DOES | ) | |
| (UNKNOWN PURDUE EMPLOYEES), | ) | |
| GARY K. EVANS, JOHN K. COX, | ) | |
| CARRIE K. COSTELLO, FRED V. | ) | |
| DAVIS, MATTHEW C. WIETBROCK, | ) | |
| JANE DOES (UNKNOWN OFFICERS | ) | |
| AND/OR SUPERVISORS), JOHN | ) | |
| DOES (UNKNOWN OFFICERS | ) | |
| AND/OR SUPERVISORS), | ) | |
| FEDERATED PUBLICATIONS, INC., | ) | |
| WILL RINEHART, JANE DOES | ) | |
| (UNKNOWN BLOGGERS), and JOHN | ) | |
| DOES (UNKNOWN BLOGGERS), | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES UNDER
TITLE 42 U.S.C.A. SECTIONS 1983, et. seq., TITLE 42 U.S.C.A. SECTION
1988, AND TITLE 28 U.S.C.A. SECTION 1367; and LIBEL, LIBEL BY
INNUENDO, LIBEL PER SE, FALSE LIGHT, INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS, RECKLESS INFLICTION OF EMOTIONAL
DISTRESS, AND NEGLIGENT INFLICATION OF EMOTIONAL DISTRESS**

Timothy J. Collins, III ("Collins"), by and through counsel, brings this action
against the defendants and hereby asserts the following claims against the defendants in
the above titled action:

**JURISDICTION**

1.      Jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1337, 1343(a)
and 1367(a); 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and 18 U.S.C. §§ 1961-1968.

2.      Jurisdiction of this Court for the pendent claims is authorized by F.R.Civ.P. 18(a) and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

3.      Jurisdiction of this Court is proper under diversity jurisdiction as Defendant Will Rinehart is a citizen of Texas, Defendant Alice M. D'Amore is a citizen of California, Defendant Federated Publications, Inc. is a Delaware Corporation with its principal place of business in Michigan, Collins is a citizen of Connecticut, and Collins is requesting damages in excess of $100,000.

## VENUE

4.      Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b) because Purdue University is located in this judicial district and the events giving rise to Collins' claims occurred in this judicial district.

## PARTIES

5.      Collins is a natural person who resided in West Lafayette, Indiana, as a Purdue University student during Purdue's 2006-2007 academic year and is a citizen of Connecticut.  He is presently on active duty with the U.S. Army.

6.      Upon information and belief, Defendant The Trustees of Purdue University ("Purdue") is an accredited Indiana state university located in West Lafayette, Indiana and in other parts of Indiana, which is governed by a Board of Trustees.

7.      Upon information and belief, Purdue University Police Department ("PUPD") is a professional law enforcement department, which is a part of and is empowered by Purdue located in West Lafayette, Indiana and in other parts of Indiana.

8.      Upon information and belief, Defendant Stephen J. Akers ("Akers") is a citizen of Indiana and was employed by Purdue as an Executive Associate Dean at all times relevant to the incidents giving rise to this Complaint.

9.      Upon information and belief, Defendant Lyman (Trae) R. Mitten III ("Mitten") is a citizen of Indiana and was employed by Purdue as an Assistant Dean at all times relevant to the incidents giving rise to this Complaint.

10.     Upon information and belief, Defendant Jeanne V. Norberg ("Norberg") is a citizen of Indiana and was employed by Purdue as a Spokesperson and Director of the University News Service at all times relevant to the incidents giving rise to this Complaint.

11.     Upon information and belief, Defendant Alice M. D'Amore ("D'Amore") is a citizen of California and was employed by Purdue as an Instructor at all times relevant to the incidents giving rise to this Complaint.

12.     Upon information and belief, Defendant John Does and Jane Does are/were citizens of Indiana and were unknown Purdue employees (collectively, "Unknown Purdue Staff and Personnel") who were involved in the investigation of and/or disciplining of Collins at all times relevant to the incidents giving rise to this Complaint.

13.     Upon information and belief, Defendant Gary K. Evans ("Evans") is a citizen of Indiana and was employed by PUPD as the Chief of Police at all times relevant to the incidents giving rise to this Complaint.

14.     Upon information and belief, Defendant John K. Cox ("Cox") is a citizen of Indiana and was employed by PUPD as a Captain at all times relevant to the incidents giving rise to this Complaint.

15.     Upon information and belief, Defendant Carrie K. Costello ("Costello") is a citizen of Indiana and was employed by PUPD as a Detective Sergeant at all times relevant to the incidents giving rise to this Complaint.

16.     Upon information and belief, Defendant Fred V. Davis ("Davis") is a citizen of Indiana and was employed by PUPD as a Detective Lieutenant at all times relevant to the incidents giving rise to this Complaint.

17.     Upon information and belief, Defendant Matthew C. Wietbrock ("Wietbrock") is a citizen of Indiana and was employed by PUPD as a Detective at all times relevant to the incidents giving rise to this Complaint.

18.     Upon information and belief, Defendant John Does and Jane Does are/were citizens of Indiana and were unknown PUPD employees of unknown rank (collectively, "Unknown PUPD Officers and/or Supervisors" or "Unknown PUPD Officers" or "Unknown PUPD Supervisors") who were involved in the investigation of Collins and/or were supervisors of the PUPD Defendants at all times relevant to the incidents giving rise to this Complaint.

19.     Upon information and belief, Defendant Federated Publications, Inc. ("Federated"), a Delaware Corporation with its principal place of business in Michigan, owned, operated, and published a daily newspaper in Lafayette, Indiana that operated under the name "Journal & Courier" ("Journal & Courier") at all times relevant to the incidents giving rise to this Complaint.

20.     Upon information and belief, Defendant Will Rinehart ("Rinehart") is a citizen of Texas and was a student at Texas A&M University all times relevant to the incidents giving rise to this Complaint.  Rinehart made blog entries that were intended to be read and were read by persons in West Lafayette, Indiana; sent emails and otherwise exchanged information with Defendant Norberg; exchanged information with Unknown PUPD Officers and/or Supervisors; and exchanged information with Defendant Federated.

21.     Upon information and belief, Defendant John Does and Jane Does are/were residents of Indiana and other jurisdictions ("Unknown Bloggers") at all times relevant to the incidents giving rise to this Complaint.  These individuals made blog entries that were intended to be read and were read by persons in West Lafayette, Indiana.

22.     At all times relevant to the incidents giving rise to this Complaint, Defendants Purdue, Akers, Mitten, Norberg, D'Amore, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and Unknown PUPD Officers and/or Supervisors acted under color of law and pursuant to the state and local laws, statutes, regulations, ordinances, official policy, custom practice and/or usage of the State of Indiana, City of West Lafayette and Purdue and the PUPD (collectively, "Color of Law").

23.     Collins sues all public employees in their official and individual capacities.

# BACKGROUND

24.     During the 2006-2007 academic year, Collins was a student at Purdue's West Lafayette campus.

25.     On or about January 13, 2007, Collins was attacked on the West Lafayette campus by three assailants and sustained injuries as a result of the assault.

26.     On or about January 13, 2007, Collins sought treatment at the Purdue University Student Health Center for pain and suffering from his injuries resulting from the assault.

27.     On or about January 13, 2007, the medical staff at the Purdue University Student Health Center referred Collins to Emergency Room of the St. Elizabeth Medical Center ("St. Elizabeth") for further examination and treatment.

28.     On or about January 13, 2007, at the urging of the St. Elizabeth's staff, Collins reported the assault to the PUPD.  The PUPD dispatched a PUPD Officer who took a statement from Collins at the St. Elizabeth's Emergency Room.

29.     On or about January 13, 2007, the PUPD transported Collins from the St. Elizabeth's Emergency Room to the PUPD Stationhouse where Defendant Wietbrock obtained information to create composite pictures of Collins' three attackers.

30.     On or about January 16, 2007, Purdue student Wade S. Steffey ("Steffey") was reported missing after having last been seen in the late hours of January 12, 2007.

31.     From on or about and between January 16, 2007 and March 22, 2007, Defendants Purdue, Evans, Cox, Costello, Davis, Wietbrock and other Unknown PUPD Officers and/or Supervisors were under enormous pressure to find Steffey.

32.     From on or about and between January 16, 2007 and March 22, 2007, Defendants Purdue, Norberg, D'Amore, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis and Wietbrock, and other Unknown PUPD Officers and/or Supervisors intentionally, willfully and with deliberate indifference, jointly and severally, determined to make Collins the prime suspect in Steffey's disappearance.

33.     To that end, from on or about and between January 16, 2007 through March 22, 2007, Defendants Purdue, Norberg, D'Amore, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis and Wietbrock, and other Unknown PUPD Officers and/or Supervisors intentionally, willfully and with deliberate indifference, jointly and severally, determined to make Collins admit that he caused Steffey's disappearance.

34.     From on or about and between January 16, 2007 and March 22, 2007, Defendants Purdue, Norberg, D'Amore, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis and Wietbrock, and other Unknown PUPD Officers and/or Supervisors, intentionally, willfully and with deliberate indifference, jointly and severally, used every means at their disposal, including, but not limited to, powers under the Color of Law, police powers, publishing and postings to public media, conducting disciplinary proceedings and bringing false criminal charges to harass, intimidate and coerce Collins into admitting that he knew about or was involved in Steffey's disappearance.

35.     From on or about and between January 16, 2007 and March 22, 2007, Defendants Norberg, D'Amore, Rinehart, and Unknown Bloggers intentionally, willfully,

recklessly and with complete indifference to the truth, published entries on the social network site Facebook and other online forums linking Collins to Steffey's disappearance.

36.     From on or about and between January 16, 2007 and March 22, 2007, Defendant Federated intentionally, recklessly and with complete disregard for the truth published news articles that linked Collins to Steffey's disappearance.

37.     From on or about and between January 16, 2007 and March 22, 2007, Defendant Federated willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth enabled and caused bloggers to post false, defamatory, harassing, and intimidating statements about Collins on the Defendant Federated's website for the Journal & Courier.

38.     From on or about February 5, 2007 through February 7, 2008, Defendants Purdue, Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, arbitrarily, intentionally, willfully, with malice and indifference to Collins' rights under the U.S. Constitution encouraged, initiated and maintained criminal charges against Collins that Defendants knew were without factual basis and were without probable cause.

39.     From on or about February 2, 2007, through and including the present, Defendants Purdue, Akers, Mitten and other Unknown Purdue Staff and Personnel, intentionally, willfully and with complete indifference to the truth, initiated and conducted disciplinary proceedings against Collins based upon the baseless criminal charges.

40.     On or about March 20, 2007, Defendants Purdue, Akers, Mitten and other Unknown Purdue Staff and Personnel, intentionally, willfully and with complete indifference to the truth, found Collins guilty in disciplinary proceedings and disciplined him.

41.     Two days later, on or about March 22, 2007, Steffey's body was found in a utility closet in the same building in which he was last seen.

42.     On or about February 7, 2008, Judge Meade, Tippecanoe Superior Court 5, found that the charges brought by the PUPD against Collins were not supported by the evidence and directed that a verdict of not guilty be entered.

43.     From on or about February 7, 2008 through and including the present, Defendants Purdue, Akers, Mitten and other Unknown Purdue Staff and Personnel intentionally, willfully and with utter indifference to truth and fairness, refuse to remove, correct, and expunge Collins' baseless disciplinary sanctions from his Purdue records.

## CHARGES

## COUNT I
## VIOLATIONS OF 42 U.S.C. § 1983 (Unlawful Detention and Seizures)

44.     Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 43 above with the same force and effect as if herein set forth.

45.     At all times relevant herein, the conduct of  Defendants Purdue, Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock,

and other Unknown PUPD Officers and/or Supervisors were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

46.     Acting under the Color of Law, Defendants Purdue, Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, acting individually and in concert, denied Collins' rights, privileges, or immunities secured by the Fourth, Fifth, Sixth, and Fourteen Amendments of the U.S. Constitution, to wit:

        a.     The above-identified Defendants deprived Collins of life, liberty, and property without due process of law and without the equal protection of laws;

        b.     The above-identified Defendants deprived Collins of his life, liberty, and property by engaging in unreasonable searches and seizures, without a warrant and without probable cause at his residence and person; and

        c.     From on or about January 13, 2007 through February 1, 2007, the above-identified Defendants deprived Collins of life, liberty, and property by repeatedly questioning Collins without counsel, without informing Collins of his right to counsel and by refusing to stop their questioning after Collins told Defendants Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors that he wanted the questioning to cease.

47.     On or about January 13, 2007, a PUPD Officer took an initial report at St. Elizabeth's Emergency Room about Collins' assault.

48.     On or about January 13, 2007, at approximately 11:30 p.m., a PUPD Officer transported Collins to the PUPD Stationhouse where Defendant Wietbrock prepared a composite picture of Collins' assailants and obtained Collins' written statement.

49.     On or about January 19, 2007, at approximately 6:30 p.m., Defendant Wietbrock again questioned Collins at the PUPD Stationhouse.

50.     On or about January 22, 2007, at approximately 6:30 p.m., Defendant Wietbrock and a FBI Special Agent, assigned to investigate Steffey's disappearance, entered Collins' residence even though Collins was asleep recovering from injuries resulting from his assault, which included insomnia.

51.     Collins' physical condition was well known to the PUPD since it had repeatedly questioned Collins regarding his health and it had obtained Collins' medical records from both the Purdue University Student Health Center and St. Elizabeth after Collins authorized their release at the PUPD's request.

52.     On or about January 22, 2007, Defendant Wietbrock woke Collins and took Collins to the scene of his attack.

53.     On or about January 22, 2007, Defendant Wietbrock allowed and enabled a F.B.I. Agent, assigned to Steffey's investigation, to question Collins at the PUPD Stationhouse.

54.     On or about January 22, 2007, Defendant Wietbrock seized certain of Collins' personal property upon returning with Collins to his residence.

55.     At no time did the above-identified Defendants advise Collins that he was being questioned as a suspect in Steffey's disappearance.

56.     At no time did the above-identified Defendants advise Collins that his property was seized as evidence in the investigation of Steffey's disappearance.

57.     On or about January 24, 2007, Defendant Wietbrock had Collins undergo a polygraph test.

58.     On or about January 30, 2007, Defendant Wietbrock seized additional physical evidence from Collins' residence.

59.     On or about February 5, 2007, the above-identified Defendants, intentionally, willfully and without probable cause initiated criminal charges of False Informing, a Class A misdemeanor, in Tippecanoe County Superior Court.

60.     At trial on February 7, 2008, Defendant Wietbrock testified under oath that he had no evidence to support requisite elements of the False Informing charge.

61.     At the trial's conclusion, Defendant Costello was heard to say that, in sum and substance, the PUPD never had a case.

62.     As a result of their unlawful, intentional, willful and deliberate indifference, Defendants Purdue, Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, deprived Collins of his life, liberty and property: without due process of law, without equal protection of the laws, through unlawful searches and seizures and without his right to counsel or being informed of his right to counsel.

63.     As a direct and proximate cause of the actions of Defendants Purdue, Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, the due course of justice and Collins' right to equal protection of the laws was impeded, and Collins suffered deprivation of life, liberty, and property and his rights to freedom from unreasonable searches and seizures, freedom from self-incrimination, right to counsel, and right to due process of law and suffered actual damages, special damages including severe emotional distress and pain and suffering, loss of property, loss of monies, loss of educational opportunities, loss of military commission, loss of future income earning capabilities as well as other injuries in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and protected by 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

WHEREFORE, Collins demands judgment against Defendants Purdue, Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $100,000, plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable and further demands judgment against the Defendants Norberg, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for punitive damages.

## COUNT II
## VIOLATIONS OF 42 U.S.C. § 1983 (Failure to Train)

64.     Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 63 above with the same force and effect as if herein set forth.

65.     Acting under the Color of Law, Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, with deliberate indifference to the rights of persons with whom the PUPD comes into contact, failed to train Defendants Costello, Davis, Wietbrock and other Unknown PUPD Officers, in procedure clearly necessary to avoid violating the Constitutional rights of citizens, including, but not limited to:

       a.     Training PUPD Officers on the content and application of the Fourth Amendment requirements of probable cause to seize persons and property;

       b.     Training PUPD Officers on the content and application of the Fifth Amendment;

       c.     Training PUPD Officers on the content and application of the Sixth Amendment;

       d.     Training PUPD Officers on the content and application of the Fourteenth Amendment requirements of Due Process;

       e.     Training PUPD Officers to refrain from unlawfully, intentionally, willfully and maliciously harassing a citizen who was acting in accordance with his Constitutional and statutory rights, privileges, and immunities; and

       f.     Training PUPD Officers to refrain from unlawfully and maliciously bringing false charges against a citizen who was acting in accordance with his Constitutional and statutory rights, privileges and immunities.

66.     At all times relevant to this Complaint, Defendants Costello, Davis, Wietbrock and other Unknown PUPD Officers, were acting under the direction and control of Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors.

67.     As a direct and proximate cause of the failure of Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, who acted with deliberate indifference to the obvious training needs of PUPD Officers, the due course of justice and Collins' right to equal protection of the laws was impeded, and Collins suffered deprivation of life, liberty and property and his rights to freedom from unreasonable searches and seizures, freedom from self-incrimination, right to counsel and right to due process of law and suffered actual damages, special damages including severe emotional distress and pain and suffering, loss of property, loss of monies, loss of educational opportunities, loss of military commission, loss of future income earning capabilities as well as other injuries in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and protected by 42 U.S.C. § 1983.

WHEREFORE, Collins demands judgment for the failure to train against Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $100,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendants other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, jointly and severally, for punitive damages.

## COUNT III
### VIOLATIONS OF 42 § U.S.C. 1983 (Failure to Supervise and Prevent Unconstitutional Actions of Officers)

68.     Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 67 above with the same force and effect as if herein set forth.

69.     Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, acting under the Color of Law, having direct or constructive knowledge of the acts by PUPD Officers, approved, ratified, acquiesced in or were deliberately indifferent to the unconstitutional conduct of Defendants Costello, Davis, Wietbrock and other Unknown PUPD Officers as heretofore described.

70.     Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors had knowledge or should have had knowledge that the wrongs conspired to be done and, in fact committed, as heretofore alleged.

71.     Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors had power to prevent or aid in preventing the commission of said wrongs.

72.     Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors could have done so by reasonable diligence.

73.     Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors intentionally, knowingly, recklessly or with deliberate indifference failed or refused to do so or consented to the commission of the wrongful acts of Defendants Costello, Davis, Wietbrock and other Unknown PUPD Officers.

74.     As a direct and proximate cause of the intentional, willful, deliberate indifference  or the consent of Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors in the commission of said wrongs, the due course of justice and Collins' right to equal protection of the laws was impeded, and Collins suffered deprivation of life, liberty, and property and his rights to freedom from unreasonable searches and seizures, freedom from self-incrimination, right to counsel and right to due process of law causing Collins to suffer actual damages, general damages, special damages including severe emotional distress and pain and suffering, loss of property, loss of monies, loss of educational opportunities, loss of military commission, loss of future income earning capabilities as well as other injuries in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and protected by 42 U.S.C. § 1983.

WHEREFORE, Collins demands judgment against Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $100,000 plus the costs of this action, including

attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendants other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, jointly and severally, for punitive damages.

## COUNT IV
## VIOLATIONS OF 42 U.S.C. § 1983 (Initiating and Maintaining the Prosecution of False Criminal Charges)

75.     Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 74 above with the same force and effect as if herein set forth.

76.     Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, acting under the Color of Law, intentionally, willfully, with malice or deliberate indifference arbitrarily and without probable cause initiated and maintained false criminal charges against Collins.

77.     On or about and between January 16, 2007 and February 5, 2007, the above-identified Defendants determined to bring criminal charges of False Informing, a Class A misdemeanor against Collins.

78.     On or about February 5, 2007, based upon information recited by the above-identified Defendants, a criminal charge of False Informing, a Class A misdemeanor, was filed in Tippecanoe Superior Court, Lafayette, Indiana.

79.     At no time did the above-identified Defendants attempt to remove, re-examine, or reconsider the criminal charges against Collins after it was determined that Collins had no connection to Steffey's disappearance.

80.     From on or about and between February 2, 2007 and February 7, 2008, the above-identified Defendants maintained the criminal prosecution against Collins.

81.     On or about February 7, 2008, Defendant Wietbrock appeared at Collins' trial and testified against Collins.

82.     In his sworn testimony, Defendant Wietbrock (who was the PUPD's principal investigating officer), in sum and substance, admitted that:

a.     the PUPD was investigating Collins in connection with Steffey's disappearance;

b.     he seized property from Collins as evidence to be examined in the Steffey investigation;

c.     he was embarrassed by the investigation into Steffey's disappearance;

d.     the PUPD was under considerable attention and pressure regarding the absence and disappearance of Steffey.

83.     Defendant Wietbrock further testified under oath that he had no evidence that Collins intentionally gave false information to the PUPD and that he could not speculate on Collins' intentions.

84.     At the trial's conclusion, Defendant Costello was heard to say that, in sum and substance, the PUPD never had a case.

85.     On or about February 7, 2008, Tippecanoe Superior Court 5 issued a directed verdict and found Collins not guilty of the criminal charges of False Informing.

86.     On or about February 7, 2008, Tippecanoe Superior Court 5 provided the basis for its decision stating that " . . . you don't prove a case and establish somebody's guilty just as soon as the police officer gets the gut instinct that somebody is lying [to the police] . . . . And I'm afraid that's kind of where we are here on this one."

87.     As a proximate cause of the intentional, willful, malicious actions of Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors and their deliberate indifference in the commission of said wrongs,  the due course of justice and Collins' right to equal protection of the laws was impeded, and Collins suffered deprivation of life, liberty, and property and his rights to freedom from unreasonable searches and seizures, freedom from self-incrimination, right to counsel and right to due process of law causing Collins to suffer actual damages, general damages, special damages including severe emotional distress and pain and suffering, loss of property, loss of monies, loss of educational opportunities, loss of military commission, loss of future income earning capabilities as well as other injuries in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and protected by 42 U.S.C. § 1983.

WHEREFORE, Collins demands judgment against Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $100,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against the Defendants other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, and other Unknown PUPD Supervisors, jointly and severally, for punitive damages.

## COUNT V
## VIOLATIONS OF 42 U.S.C. § 1983 (Procedural and Substantive Due Process)

88.     Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 87 above with the same force and effect as if herein set forth.

89.     On or about and between January 13, 2007 and March 20, 2007, Defendants Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors relayed information concerning their investigation of Collins' assault and Steffey's disappearance to Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel.

90.     As a result of their joint and concerted actions, Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel charged Collins with violations of Purdue policy based upon PUPD's speculative, unsubstantiated and/or false reports.

91.     On or about and between January 13, 2007 and March 20, 2007, Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel failed to conduct an independent investigation regarding PUPD's allegations.

92.     On or about March 20, 2007, Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel conducted a conclusory disciplinary hearing.

93.     Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel did not provide Collins proper notice of the charges.

94.     Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel did not provide Collins with proper notice of the Disciplinary Hearing.

95.     Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel deprived Collins of his right to counsel.

96.     On or about March 20, 2007, Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel disciplined Collins.

97.     Sometime after February 7, 2008, Collins communicated to Mitten that Tippecanoe Superior Court 5 found Collins not guilty of the False Informing charge and requested that Purdue overturn its disciplinary decision against Collins.

98.     In that conversation, Mitten told Collins that Purdue never overturns disciplinary decisions.

99.     On or about January 26, 2009, Mitten, in sum and substance, reiterated to Collins' stepfather that Purdue never overturns disciplinary decisions.

100.    On or about January 26, 2009, Mitten stated, in sum and substance, there was no reason to overturn the disciplinary decision against Collins.

101.    The above-identified Defendants' refusal to review, re-evaluate, or reconsider their disciplinary decision against Collins is plainly arbitrary and capricious.

102.    As a result of the action of their actions, Defendants Purdue, Akers, Mitten, Norberg, and other Unknown Purdue Staff and Personnel, in concert with the Defendants Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, have intentionally, willfully, arbitrarily and capriciously impeded the due course of justice and Collins' right to equal protection of the laws was impeded, and Collins suffered deprivation of life, liberty, and property and his rights to freedom from unreasonable searches and seizures, freedom from self-incrimination, right to counsel and right to due process of law causing Collins to suffer actual damages, general damages, special damages including severe emotional distress and pain and suffering, loss of property, loss of monies, loss of educational opportunities, loss of military commission, loss of future income earning capabilities as well as other injuries in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and protected by 42 U.S.C. § 1983

WHEREFORE, Collins demands judgment against Defendants Purdue, Akers, Mitten, Norberg, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for actual, general, special and compensatory damages plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable and against Defendants Akers, Mitten, Norberg, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for punitive damages.

## COUNT VI
## VIOLATIONS OF 42 U.S.C. § 1983 (Conspiracy)

103.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 102 above with the same force and effect as if herein set forth.

104.    Defendants Purdue, Akers, Mitten, Norberg, D'Amore, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors conspired to bring about the actions alleged in Counts I-V of this Complaint.

105.    As a result of the concerted unlawful and malicious conspiracy of Defendants Purdue, Akers, Mitten, Norberg, D'Amore, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, the due course of justice and Collins' right to equal protection of the laws was impeded, and Collins suffered deprivation of his life, liberty, and property and life, liberty and property and his rights to freedom from unreasonable searches and seizures, freedom from self-incrimination, right to counsel and right to due process of law causing Collins to suffer actual damages, general damages, special damages including severe emotional distress and pain and suffering, loss of property, loss of monies, loss of educational opportunities, loss of military commission, loss of future income earning capabilities as well as other injuries in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and protected by 42 U.S.C. § 1983 and § 1985.

WHEREFORE, Collins demands judgment for the conspiracy against Defendants Purdue, other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for actual, general, special, compensatory damages in excess of $100,000 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable and further demands judgment against Defendants other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, jointly and severally, for punitive damages.

## COUNT VII
## LIBEL BY INNUENDO
## (Federated Publications, Inc. Article)

106.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 105 above with the same force and effect as if herein set forth.

107.    At all times relevant to the incidents giving rise to this Complaint, Defendant Federated was and still is the owner and publisher of a certain newspaper, previously defined as the Journal & Courier, published in the City of Lafayette, Indiana and of a general circulation in an area known as Tippecanoe County, Indiana and adjoining Indiana counties and through the Internet, available to the public throughout the United States.

108. On or about February 10, 2007, Defendant Federated published concerning Collins the following false and defamatory matter: Headline Student Who Reported Mugging Charged. "A Purdue University student who told police he was mugged on campus by three strangers the same night Wade Steffey disappeared has been charged with misdemeanor false informing. Timothy J. Collins III, 19, who lives in Owen Residence Hall, was charged this week . . . According to the charging information, the false statement 'hindered any law enforcement process or resulted in harm to an innocent person' . . . According to supporting documents, Collins submitted to a police polygraph examination Jan. 24 regarding the alleged attack. The results of the polygraph 'suggested deception,' according to a police report. At least eight police officers for three departments were involved in the investigation."

109. This article published concerning Collins includes statements that, in context, were false and defamatory.

110. At the time Defendant Federated published false and defamatory statements, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

111. By the article set forth above, Defendant Federated meant, intended to mean, and was understood to mean by the persons reading the article that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

112. Defendant Federated published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

113. Defendant Federated's false and defamatory statements damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community, and the academic community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendant Federated for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendant Federated for punitive damages.

## COUNT VIII
## LIBEL PER SE
### (Federated Publications, Inc. Article)

114.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 113 above with the same force and effect as if herein set forth.

115.    At all times relevant to the incidents giving rise to this Complaint, Defendant Federated was and still is the owner and publisher of a certain newspaper, previously defined as the Journal & Courier, published in the City of Lafayette, Indiana and of a general circulation in an area known as Tippecanoe County, Indiana and adjoining Indiana counties and through the Internet, available to the public throughout the United States.

116.    On or about February 10, 2007, Defendant Federated published an article in the Journal & Courier concerning Collins that contained false and defamatory statements as set forth in Count VII.

117.    This false and defamatory statements published concerning Collins includes statements that constitute defamation per se because they plainly impute criminal conduct by Collins in connection with Steffey's disappearance.

118.    At the time Defendant Federated published this article, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

119.    By the article set forth above, Defendant Federated meant, intended to mean, and was understood to mean by the persons reading the article that Collins was a criminal suspect in Steffey's disappearance and/or that Collins did through criminal conduct cause Steffey's disappearance and/or hindered the investigation of Steffey's disappearance.

120.    Defendant Federated published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

121.    Defendant Federated's false and defamatory  statements damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community, and the academic community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendant Federated for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be

just and equitable; and, further demands judgment against Defendant Federated for punitive damages.

## COUNT IX
## FALSE LIGHT
### (Federated Publications, Inc. Article)

122.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 121 above with the same force and effect as if herein set forth.

123.    At all times relevant to the incidents giving rise to this Complaint, Defendant Federated was and still is the owner and publisher of a certain newspaper, previously defined as the Journal & Courier, published in the City of Lafayette, Indiana and of a general circulation in an area known as Tippecanoe County, Indiana and adjoining Indiana counties and through the Internet, available to the public throughout the United States.

124.    On or about February 10, 2007, Defendant Federated published an article in the Journal & Courier concerning Collins that contained false and defamatory statements as set forth in Count VII.

125.    This article published concerning Collins includes statements that were, in context, false and defamatory.

126.    These false and defamatory statements portrayed Collins in a "false light."

127.    This portrayal was highly offensive to reasonable persons because of, but not limited to, the imputation of criminal conduct.

128.    At the time Defendant Federated published this article, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

129.    By publishing the false and defamatory statements, Defendant Federated meant, intended to mean, and was understood to mean by the persons reading the article that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

130.    Defendant Federated published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

131.    Defendant Federated published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with respect to the "false light" in which Collins would be placed.

132.    Defendant Federated's false and defamatory statements damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community, and the academic community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning

and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendant Federated for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendant Federated for punitive damages.

## COUNT X
## LIBEL
### (Federated Publications, Inc. Article Postings)

133.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 132 above with the same force and effect as if herein set forth.

134.    At all times relevant to the incidents giving rise to this Complaint, Defendant Federated was and still is the owner and publisher of a certain newspaper, previously defined as the Journal & Courier, published in the City of Lafayette, Indiana and of a general circulation in an area known as Tippecanoe County, Indiana and adjoining Indiana counties and through the Internet, available to the public throughout the United States.

135.    On or about February 10, 2007, Defendant Federated published an article in the Journal & Courier concerning Collins that contained statements that were, in context, false and defamatory as set forth in Count VII.

136.    On or about February 10, 2007 and thereafter, Defendant Federated enabled and caused readers to post comments to the February 10, 2007 Journal & Courier article concerning Collins on the Journal & Courier's website (www.journalandcourier.com).

137.    At the time Defendant Federated published this matter, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

138.    On or about February 10, 2007 and thereafter, Defendant Federated willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth, published reader comments attached to the February 10, 2007 Journal & Courier article concerning Collins.

139.    The reader posts concerned Collins and were false and defamatory:

a.    On or about February 10, 2007, at approximately 9:31 a.m., a post entitled "An idiot in deed." reads "It would not surprise me in theleast to find out that this Collins kid knows exactly what happened to Wade Steffey.  He probably got the laceration from Wade trying to protect himself."

b.    On or about February 10, 2007, at approximately 2:40 p.m., a post entitled "I hate to say I TOLD YOU SO—but I told you so!!" reads "I had said that someone KNOWS what happened to Wade and that it wouldn't surprise me in the lest bit IF that 'someone' didn't deliberately try to mislead the investigation

and throw LE off of the real trail, by giving false information. I must say however, that I AM surprised that it was someone who claimed to have been attacked by that same night—but then again I think this assine piece of trash felt he had no choice but to do that, so as to throw suspicion OFF of him, as to WHY he was sporting a wound to his head – incurred apparently the SAME night Wade siappeared. I say put the squeeze on this trash and make him sing—it wouldn't surprise me IF HIS 'attack' isn't the exact way things went down for poor Wade— a brick. Sick, sick individual who would make up such a story and NOT know something about the actual truth of a crime. This guy needs everything from his underwear to his home-away-from-home investigated and checked for ANY trace evidence against him where WADE is concerned—Purdue DO NOT screw this up now. He LIED for a reason and I don't think it was for attention—LE needs to stick to his a** like bees on honey. Sickens me. CIB."

      c.    On or about February 10, 2007, at approximately 3:49 p.m., a reader posted the following: "CIB, I went back to read some of this kid's lie. I find it awfully coincidental that his version mentions that he lives in Owen and he was attacked outside Cary – and I believe both of those buildings were mentioned in the Steffey story. Just thought it odd. Who knows, but you are right, definitely worth shaking the crap out of the idiot."

140.    By publishing the reader comments, Defendant Federated was the direct and proximate cause of spreading written statements that plainly inflamed the community and further damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community and the academic community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendant Federated for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendant Federated for punitive damages.

## COUNT XI
## LIBEL PER SE
### (Federated Publications, Inc. Article Postings)

141.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 140 above with the same force and effect as if herein set forth.

142.    At all times relevant to the incidents giving rise to this Complaint, Defendant Federated was and still is the owner and publisher of a certain newspaper,

previously defined as the Journal & Courier, published in the City of Lafayette, Indiana and of a general circulation in an area known as Tippecanoe County, Indiana and adjoining Indiana counties and through the Internet, available to the public throughout the United States.

143. On or about February 10, 2007, Defendant Federated published an article in the Journal & Courier concerning Collins that contained false and defamatory statements as set forth in Count VII.

144. On or about February 10, 2007 and thereafter, Defendant Federated enabled and caused readers to post comments to the February 10, 2007 Journal & Courier article concerning Collins on the Journal & Courier's website (www.journalandcourier.com).

145. At the time Defendant Federated published this article, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

146. On or about February 10, 2007 and thereafter, Defendant Federated willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth, published reader comments attached to the February 10, 2007 Journal & Courier article concerning Collins.

147. As set forth in Count X, the reader comments published concerning Collins contained false and defamatory statements.

148. As set forth in Count X, the reader comments published concerning Collins include statements that constitute defamation per se because they impute criminal conduct.

149. By the postings set forth in Count X, the publishers of the reader comments meant, intended to mean, and were understood to mean by the persons reading the article that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

150. By publishing the reader comments, Defendant Federated was the direct and proximate cause of spreading written statements that plainly inflamed the community and further damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community, and the academic community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendant Federated for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be

just and equitable; and, further demands judgment against Defendant Federated for punitive damages.

## COUNT XII
## FALSE LIGHT
### (Federated Publications, Inc. Article Postings)

151.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 150 above with the same force and effect as if herein set forth.

152.    At all times relevant to the incidents giving rise to this Complaint, Defendant Federated was and still is the owner and publisher of a certain newspaper, previously defined as the Journal & Courier, published in the City of Lafayette, Indiana and of a general circulation in an area known as Tippecanoe County, Indiana and adjoining Indiana counties and through the Internet, available to the public throughout the United States.

153.    On or about February 10, 2007, Defendant Federated published an article in the Journal & Courier concerning Collins that contained false and defamatory statements as set forth in Count VII.

154.    On or about February 10, 2007 and thereafter, Defendant Federated enabled and caused readers to post comments to the February 10, 2007 Journal & Courier article concerning Collins on the Journal & Courier's website (www.journalandcourier.com).

155.    At the time Defendant Federated published this article, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

156.    As set forth in Count X, the reader comments published concerning Collins contained false and defamatory statements.

157.    By the postings set forth in Count X, Defendant Federated meant, intended to mean, and was understood to mean by the persons reading the article that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

158.    These false and defamatory statements portrayed Collins in a "false light."

159.    This portrayal was highly offensive to reasonable persons because of, but not limited to, the imputation of criminal conduct.

160.    Defendant Federated published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

161.    Defendant Federated published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with respect to the "false light" in which Collins would be placed.

162.    By publishing the reader comments, Defendant Federated was the direct and proximate cause of spreading written statements that plainly inflamed the community and further damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community, and the academic community,

among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendant Federated for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendant Federated for punitive damages.

## COUNT XIII
## LIBEL
### (Bloggers)

163.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 162 above with the same force and effect as if herein set forth.

164.    On or about and between, January 16, 2007 and March 22, 2007, Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, individually and in concert, used the social networking site known as "Facebook" to publish false and defamatory statements about Collins.

165.    At the time Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published the false and defamatory statements, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

166.    These false and defamatory statements concerned Collins.

167.    These false and defamatory statements were made and published willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

168.    The messages published on Facebook and were false and defamatory:

a.    On or about Saturday, January 20, 2007, at approximately 7:03 p.m., Defendant Rinehart posted to Facebook that "it's possible that the so-called victim [Collins] is lying through his teeth about what happened that night."

b.    On or about Sunday, January 21, 2007, at approximately 9:56 p.m., Defendant Rinehart posted to Facebook that he had created a blog of "his speculation" at wadesteffey.blogspot.com and continued that "[w]hile my hunches may very well be incorrect, yesterday I emailed that ideas to the Purdue police department.  Today I received a response: 'I can only say that I like the way you are thinking.'"

c.　　On or about Saturday, January 27, 2007, at approximately 9:09 a.m., Defendant Norberg replied to Rinehart's Facebook posts and wrote, "[i]n the second report alleged victim said he was hit by someone 5'7" with what felt like a brick at 11:30 p.m. . . . Police have been investigating this case very carefully. They have talked to the person who allegedly was attacked and his friends extensively.  On Friday, we issued a report on their behalf that provides an update . . . if you want to share it with others, here is the URL."

d.　　On or about Monday, January 29, 2007, at approximately 7:09 a.m., Defendant Rinehart posted to Facebook that "I have messaged Jeanne Norberg, Purdue Spokesperson and Director of Purdue News.  She sent me a message on Facebook . . . I have asked her for any new updates . . . ."

e.　　On or about Monday, January 29, 2007, Defendant Rinehart replied to Defendant Norberg's Facebook post that "This made the bells in my head go 'ding ding ding' considering the possible scenarios I had come up with if the cases were related.  I had been writing another reporter from another paper in town about those issues since I wrote the email to the police . . ."

f.　　On or about Saturday, February 10, 2007, at approximately 6:59 a.m., Defendant D'Amore posted to Facebook that "he may have reported when police asked how he received the injury on his forhead to cover his ass."

g.　　On or about Saturday, February 10, 2007, at about 4:21 p.m., Defendant Rinehart posted to Facebook that ". . . it definitely makes him look suspicious . . . I hope he confesses very soon for the sake of Wade Steffey family and friends."

h.　　On or about Saturday, February 10, 2007, at about 7:58 p.m., Defendant D'Amore posted to Facebook that ". . . he would want to protect himself because sometimes silence works (see: aruba)."

i.　　On or about Saturday, February 10, 2007, at about 8:01 p.m., Defendant Rinehart posted to Facebook that "[y]es my gut is telling me that this guy has something to do with it. guilty. guilty. guilty.  I wish he would confess."

j.　　On or about Monday, February 12, 2007, at about 9:04 p.m., Defendant D'Amore posted to Facebook that "No one is condoning a 'lynch mob.'  Mr. Collins lied about being 'attacked' by three men on the same night Wade Steffey disappeared. Three stations were involved in the charge against Collins. This isn't something being taken lightly.  No one is a conspiracy theorist; the police do not yet have Wade, so waging a credible offense is going to be difficult, but that's what they're doing at present . . . I in no way meant to 'incite the masses' by posting the article.  But traditionally, there have been reasons people fabricated testimonies of being 'attacked' by others."

169.　　By the messages set forth above, Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers meant, intended to mean, and were understood to mean by the persons reading the postings that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

170.　　Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers false and defamatory statements damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community and the academic community, among his peers and across the country for honesty, integrity, and morality;

exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, jointly and severally, for punitive damages.

## COUNT XIV
## LIBEL PER SE
### (Bloggers)

171.     Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 170 above with the same force and effect as if herein set forth.

172.     As set forth in Count XIII, Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published Facebook messages.

173.     These Facebook messages contained false and defamatory statements.

174.     These false and defamatory statements concerned Collins.

175.     These false and defamatory statements include statements that constitute defamation per se because they impute criminal conduct.

176.     At the time Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published the false and defamatory statements, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

177.     By the messages set forth in Count XIII, Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers meant, intended to mean, and were understood to mean by the persons reading the postings that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

178.     These false and defamatory statements were made and published willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

179.     Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers false and defamatory statements damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community and the academic community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other

academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, jointly and severally, for punitive damages.

## COUNT XV
## FALSE LIGHT
### (Bloggers)

180.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 179 above with the same force and effect as if herein set forth.

181.    As set forth in Count XIII, Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published Facebook messages.

182.    These Facebook messages contained false and defamatory statements.

183.    These false and defamatory statements concerned Collins.

184.    These false and defamatory statements portrayed Collins in a "false light."

185.    At the time Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published the false and defamatory statements, it was well known in the Purdue University, West Lafayette, Indiana, Lafayette, Indiana, and Indiana communities, and as a matter of national news, that Steffey was missing and that law enforcement authorities were trying to determine whether Steffey had been assaulted, kidnapped, and/or murdered.

186.    This portrayal was highly offensive to reasonable persons because of, but not limited to, the imputation of criminal conduct.

187.    By the messages set forth in Count XIII, Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers meant, intended to mean, and were understood to mean by the persons reading the postings that Collins was a suspect in Steffey's disappearance and/or that Collins did, in fact, cause Steffey's disappearance.

188.    Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with disregard for the truth.

189.    Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers published the false and defamatory statements willfully, knowingly, intentionally, maliciously, negligently, and/or recklessly with respect to the "false light" in which Collins would be placed.

190.    Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers false and defamatory statements damaged Collins' character and reputation in the Purdue University community, within the Lafayette, Indiana community and the academic

community, among his peers and across the country for honesty, integrity, and morality; exposed Collins to harassment, threats, public contempt, and ridicule; caused Collins to be unable to complete his education at Purdue University, to be rejected by other academic institutions, to be unable to complete his U.S. Marine Corps Platoon Leaders Course training, to not be commissioned as an officer in the U.S. Marine Corps, to lose educational stature, and to impair his earning and educational opportunities for the rest of his life; and caused Collins to suffer great pain and mental anguish and Collins seeks judgment in a sum in excess of $1,000,000.

WHEREFORE, Collins demands judgment against Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, jointly and severally, for actual, general, special and compensatory damages in an amount greater than $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable; and, further demands judgment against Defendants Norberg, D'Amore, Rinehart and other Unknown Bloggers, jointly and severally, for punitive damages.

## COUNT XVI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

191.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 190 above with the same force and effect as if herein set forth.

192.    The conduct of Defendants Purdue, Akers, Mitten, Norberg, D'Amore, and other Unknown Purdue Staff and Personnel, Evans, Cox, Costello, Davis, Wietbrock, and other Unknown PUPD Officers and/or Supervisors, Federated, Rinehart and other Unknown Bloggers (collectively, "All Defendants") was intentional, oppressive, malicious, and/or in wanton disregard of the rights and feelings of Collins and constitutes despicable conduct.

193.    By reason thereof, Collins demands compensatory, exemplary and/or punitive damages against All Defendants in a sum in excess of $1,000,000 as appropriate to punish All Defendants and to deter them and others from such conduct in the future.

WHEREFORE, Collins demands judgment against All Defendants jointly and severally, for compensatory, exemplary and/or punitive damages against All Defendants in a sum in excess of $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable.

## COUNT XVII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

194.    Collins repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 193 above with the same force and effect as if herein set forth.

195.    The conduct of All Defendants was intentional, oppressive, malicious, and/or in wanton disregard of the rights and feelings of Collins and constitutes despicable conduct.

196.   By reason thereof, Collins demands compensatory, exemplary and/or punitive damages against All Defendants in a sum in excess of $1,000,000 as appropriate to punish All Defendants and to deter them and others from such conduct in the future.

WHEREFORE, Collins demands judgment against All Defendants jointly and severally, for compensatory, exemplary and/or punitive damages against All Defendants in a sum in excess of $1,000,000 plus the costs of this action, including attorney's fees and such other relief deemed to be just and equitable.

## DEMAND FOR JURY TRIAL

WHEREFORE, Collins demands a jury trial on all Counts.

Respectfully submitted this 27th day of March, 2009.

CORCELLA LAW, P.C.

/s/ Ellen M. Corcella
Ellen M. Corcella (Atty. No. 23246-71)
CORCELLA LAW, P.C.
155 East Market Street #800
Indianapolis, IN 46204-3257
317-634-0700 (voice)
317-634-0707 (facsimile)
corcellasolutions@gmail.com (electronic mail)

-AND-

AMMEEN & ASSOCIATES, P.C.

/s/ James D. Hamstra
James J. Ammeen, Jr. (Atty. No. 18519-49)
James D. Hamstra (Atty. No. 27136-49)
AMMEEN & ASSOCIATES, P.C.
Barrister Building, Suite 860
155 E. Market St.
Indianapolis, IN 46204-3257
317-423-7505 (voice)
317-423-7506 (facsimile)
jammeen@ammeen-law.com (electronic mail)
jhamstra@ammeen-law.com (electronic mail)

*Attorneys for Plaintiff Timothy J. Collins, III*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 27th day of March, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following attorneys of record:

> Trenten D. Klingerman
> tdk@stuartlaw.com

> Christina A. Wright
> caw@stuartlaw.com

I certify that on the 27th day of March, 2009, I caused the foregoing to be served via First Class U.S. Mail, postage prepaid, to the following parties:

> Alice M. D'Amore                     Texas A&M University
> 683 Pasadena Street                  Computing and Information Services
> Pomona, CA 91767-4707                c/o Will Rinehart
>                                      3363 TAMU
>                                      College Station, TX 77843-3363

I certify that on the 27th day of March, 2009, I caused the foregoing to be served via both First Class U.S. Mail, postage prepaid, and Certified U.S. Mail, return receipt requested, to the following party:

> Federated Publications, Inc.
> c/o The Corporation Company, its
> Registered Agent
> 30600 Telegraph Road, Ste, 2345
> Bingham Farms, MI 48025

> /s/ Ellen M. Corcella
> Ellen M. Corcella